

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | Case No. 06 CR 102-2 |
| MAURICE CROWDER, ) | HONORABLE CHARLES R. NORGLE |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the court is Defendant's Motion to Suppress Evidence. For the following reasons, the Motion is denied.

## I. BACKGROUND

### A. Facts

The Government alleges that on February 3, 2006, the driver of a tractor-trailer shipping automobiles contacted the Missouri State Highway Patrol. According to the driver, he was concerned about frequent phone calls he received regarding the location of his trailer, and the location of a specific vehicle on the trailer. The Missouri State High Patrol instructed the driver to pull over at the nearest scale station. When the driver arrived at the station, he pointed out the car that was the subject of the phone calls to the officers, who subsequently searched the car. The Government states that the search of this first vehicle is not the subject of this case. Instead, this search of the first car related to an unrelated controlled delivery.

1

Upon completion of the search of the first car, the officers asked the driver if any other vehicles on the trailer raised any suspicion. The driver indicated to the officers that a 1998 Ford Mustang convertible, with a temporary Arizona License Plate had raised his suspicions, because the shipper dropped the car off, signed the paperwork, and immediately left. The driver found this strange because typically shippers sign the necessary paperwork after the shipping company has inspected the vehicle for damage. In addition, the driver noticed several unusual characteristic about the Mustang: the car had no front grill, several non-factory items had been added to it, and it lacked a hood scoop component and inner fender walls over the front tires. The officers then instructed the driver to remove the Mustang from the trailer. Further investigation revealed the Mustang was registered to Vickie Watkins, the mother of co-Defendant Charome Watkins.

The officers noticed loose screws in the front and back seats of the car. Also, the officers observed that the back seat stuck out approximately six to eight inches from the car's body. Moreover, a trained drug-sniffing dog alerted the police to the possibility of narcotics in the car. The driver consented for the officers to search the car.

In the course of the search, the officers smelled marijuana. A further search yielded approximately 80 pounds of marijuana, in addition to three kilograms of white powder. This contraband was hidden below and behind the back seat of the Mustang. The officers seized the white powder and conducted a field test on it, which resulted in a positive result for the presence of cocaine. Thereafter, the Missouri State Police contacted the Drug Enforcement Administration ("DEA") and advised them of the situtation.

Shortly thereafter, the driver spoke to Crowder over the phone, who asked about the

2

delivery date of the Mustang. The two men agreed to meet on February 7, 2006 at a specific location in Harvey, Illinois. Before that date, DEA agents prepared the car for a controlled delivery, by installing an electronic trigger device that would go off if the backseat of the car was raised.

On February 7, 2006, DEA agents set up surveillance at the site of the controlled delivery, and recorded the transaction on video. At approximately 4:45 p.m., a maroon Ford Taurus arrived near the tractor-trailer at 15200 Dixie Highway, in Harvey, Illinois. Two individuals, later identified as the Defendant and co-defendant Charome Watkins ("Watkins") exited the Taurus, and approached the tractor-trailer. Watkins then entered the Mustang and Crowder reentered the Taurus. Both men drove north on Seeley Avenue near 149th Street in Harvey, in separate vehicles.

A short time later, the DEA agents were alerted that the trigger device in the Mustang had been activated, an indication that the backseat had been moved. When the agents approached the Mustang, Watkins fled on foot. He was subsequently arrested, as was Crowder in a separate stop in the Taurus.

After Crowder's arrest, agents who worked at the controlled delivery learned that Crowder had been questioned at the Dallas-Fort Worth Airport approximately one month prior to the delivery, on January 24, 2006. Crowder and Watkins had traveled from Chicago to Tucson and had a lay over in Dallas. The two men paid for their tickets in cash, and did not carry any luggage, a fact that alerted police officers. When Crowder and Watkins exited the airplane at Dallas-Fort Worth, two DEA agents asked to interview the two men. Both defendants consented and cooperated during the interview. When the agents asked Crowder if he was in possession of

3

a large sum of money, Crowder showed the agent approximately $46,000.00 in cash, in one hundred-dollar bills. According to Crowder, he said that he obtained the money through a real estate transaction. Crowder gave the agents the name and phone number of a mortgage broker, and the alleged seller of the property. Agents phone these people who verified that a real estate transaction did occur involving the Defendant. The mortgage broker and seller faxed documents to the DEA agents in an attempt to verify the sale. After the agents reviewed these documents, Crowder agreed to let a drug sniffing dog smell the money, which resulted in a negative sniff. Crowder and Watkins were free to go, and the agents did not seize the $46,000 in cash.

## B. Procedural History

On February 8, 2006, the Government filed a criminal complaint against the Defendants, charging them with knowingly and intentionally possessing with the intent to distribute a controlled substance, namely, in excess of 500 grams of mixture containing cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C § 2. Then, on May 18, 2006, Defendants were charged in a two-count indictment. Count One of the indictment alleges that the Defendants, beginning at least on or about January 2006, and continuing until February 7, 2006, conspired and agreed to possess with intent to distribute in excess of 500 grams of mixtures containing cocaine and approximately 80 pounds of mixtures containing marijuana, in violation of 21 U.S.C. § 846. Count Two charges that on February 7, 2006, Defendants knowingly and intentionally attempted to possess with intent to distribute controlled substances, namely, in excess of 500 grams of mixtures containing cocaine and approximately 80 pounds of mixtures containing marijuana, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2.

Then, on November 2, 2006, Defendant filed this Motion to Suppress. The Government

filed its Response on January 26, 2007, and Defendant filed a Supplemental Motion to Suppress on March 28, 2007. The Government filed its Response to the Supplemental Motion on April 12, 2007. The Motion to Suppress is fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Review

The Fourth Amendment protects against "unreasonable searches and seizures" and requires that a law-enforcement officer have probable cause before making an arrest or conducting a search. U.S. Const. amend. IV; United States v. Merritt, 361 F.3d 1005, 1009 (7th Cir. 2004) *rev'd on other grounds*, 125 S.Ct. 1024 (2005). Determinations of probable cause "are naturally based on probabilities and a finding of probable cause 'does not require evidence sufficient to support a conviction...'" United States v. Funches, 327 F.3d 582, 586 (7th Cir. 2003) (quoting United States v. Carrillo, 269 F.3d 761, 766 (7th Cir. 2001)). In making probable cause determinations, "law enforcement agents are entitled to draw reasonable inferences from the facts before them, based on their training and experience." Id. Moreover, a search is not a "search" in the context of the Fourth Amendment when the defendant does not have a subjective expectation of privacy. See Kyllo v. United States, 533 U.S. 27, 31 (2001); see also United States v. Jacobsen, 466 U.S. 109, 113 (1984).

In the context of a drug sniffing dog, the Supreme Court has ruled that "the use of [such dogs] during an otherwise lawful traffic stop does not implicate a defendant's legitimate privacy interests." United States v. Martin, 422 F.3d 597, 602 (7th Cir. 2005) (quoting Illinois v. Caballes, 543 U.S. 405, 407 (2005)). Therefore, the use of such dogs is outside the purview of any Fourth Amendment analysis. See Joshua B. Adams, Search and Sniff: What's Left of the

5

Fourth Amendment after Illinois v. Caballes, 31 NEW. ENG. J. ON CRIM. & CIV. CONFINEMENT 185 (2006). Because there is "no legitimate interest in possessing contraband, the use of a well trained narcotics detection dog that 'only reveals the possession of narcotics compromises no legitimate privacy interest, and does not violate the Fourth Amendment.'" United States v. Brock, 417 F.3d 692, 695 (7th Cir. 2005) (quoting Kyllo, 533 U.S. at 40).

Terry v. Ohio, "authorized the common police practice of stopping a person who is behaving in a suspicious manner to question him briefly. . . ." 392 U.S. 1 (1968); see also United States v. Goodwin, 449 F.3d 766, 769 (7th Cir. 2006). Therefore, "under the principles established in Terry and its progeny, even without probable cause, police may conduct an investigatory stop, limited in scope and executed through the least restrictive means reasonable." United States v. Jackson, 300 F.3d 740, 745 (7th Cir. 2002). In order to effectuate an "investigatory stop, an officer needs only reasonable suspicion supported by articulable facts that criminal activity is afoot." Id. Reasonable suspicion is an "objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." Id. (quoting United States v. Cortez, 449 U.S. 411, 417 (1981)).

In addition, to stop of "a piece of luggage and interrogate it with a dog's nose fits the principle . . . of Terry, and was held to be a proper application of the underlying principle in United States v. Place, 462 U.S. 696, 703-06 (1983)." Goodwin, 449. F.3d at 769. "All that is required is that the officers' suspicion be 'reasonable'." Id. With these principles in mind, we turn to Crowder's Motion to Suppress.

## B. Defendant's Motion to Suppress

### *1. Defendant's Motion Lacks Supporting Evidence*

Crowder alleges that the investigation of the Mustang, through the use of a dog sniff, and the seizure of the contraband violated the Fourth Amendment. See Def.'s Mot., ¶ 14. Additionally, Crowder argues that the investigatory stop of Crowder and Watkins at the Dallas-Fort Worth Airport on January 24, 2006 did not comply with the principles of Terry. Id.

As a preliminary matter, the court notes that a Defendant who brings a motion to suppress "has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." United States v. Pitts, 322 F.3d 449, 460 (7th Cir. 2003) (quoting Rakas v. Ill., 439 U.S. 128, 133-34 (1978)). Here, Crowder submits no supporting affidavits or any other evidence to support the claims raised in his motion to suppress. The only evidence provided to the court are unsubstantiated allegations, without any way to verify their veracity. "A defendant seeking an evidentiary hearing on a motion to suppress must provide sufficient information to 'enable the court to conclude that a substantial claim is presented and that there are disputed issues of material fact that will effect the outcome of the motion.'" United States v. Juarez, 454 F.3d 717, 719-20 (7th Cir. 2006). Because Crowder provides no such information, the court would be within its discretion to deny the motion to suppress without an evidentiary hearing. See id.

### *2. Defendant Lacks Standing to Challenge the Search and Seizure*

The court finds that Crowder lacks standing to object to the search of the Mustang and the subsequent seizure of the contraband therein. In order to challenge the admission of illegally obtained evidence, "the defendant must have a legitimate expectation of privacy in the premises

before he can claim protection in the Fourth Amendment." United States v. Mendoza, 438 F.3d 792, 795 (7th Cir. 2006) (citing Rakas, 439 U.S. at 143); see Minnesota v. Carter, 525 U.S. 83, 91 (1998). Suppression of "fruits of a Fourth Amendment violation may be urged only by those whose rights were infringed by the search itself and not by those aggrieved solely by the introduction of incriminating evidence." Zurcher v. Stanford Daily, 436 U.S. 547, 562 n.9 (1970) (citing Alderman v. United States, 394 U.S. 165 (1969)). It is well established that "a defendant can urge the suppression of evidence obtained in violation of the Fourth Amendment only if that defendant demonstrates that his Fourth Amendment rights were violated by the challenged search or seizure." United States v. Padilla, 508 U.S. 77, 81 (1993) (citing Alderman, 394 U.S. at 171-72).

Here, Crowder's unsupported claims that he "had a proprietary interest and legitimate expectations of privacy" in the Mustang does not carry the day. See Def.'s Brief, ¶ 5. Any reasonable expectation of privacy Crowder alleges "must be demonstrated to the Court." United States v. Mendoza, 438 F.3d 792, 795 (7th Cir. 2006). Absent a supporting affidavit or "or testimony from the defendant, it is almost impossible to find a privacy interest. . . ." Id. Given the fact that the Mustang was registered to co-defendant Watkins's mother, that Crowder was not even the driver of the Mustang at the time the DEA agents stopped the car, and that Crowder relinquished control of the Mustang to a third party shipping company, Crowder does not have standing to claim that the search of the car was in violation of the Fourth Amendment.

### *3. The Search and Seizure of the Mustang Complied with the Fourth Amendment*

With an abundance of caution, the court will analyze the substantive portion of the Motion to Suppress, even though Crowder lacks standing to object. Here, Crowder relinquished complete control of the vehicle which contained the controlled substances to the driver of the trailer, as per the terms of the lading contract. Additionally, the driver noted that the Mustang was delivered in a manner that he deemed odd, in that the shipper left without waiting for an inspection to take place. The driver observed that the car was missing several parts, and that the backseat was out of alignment. Lastly, after the driver notified the proper authorities, agents conduct a dog sniff, which alerted them to the presence of contraband.

Plainly put, Crowder cannot establish a reasonable expectation of privacy in the drug-laden Mustang. He delivered the car and its contents to the shipping company to transport across the country, and surrendered the keys to the automobile upon delivery. As a result, the bailee, in this case the driver, had complete access to the car, in order to drive it onto and off of the truck, in addition to number of other purposes. "A reasonable expectation of privacy is infringed when the defendant exhibits an actual or subjective expectation of privacy, and the expectation is one that society is prepared to recognize as reasonable." Mendoza, 438 F.3d at 795. The driver had complete control and full access to the Mustang when it was shipped to Illinois. No individual, who relinquishes control over a vehicle in the manner done so by Crowder, could possess a subjective expectation of privacy in that vehicle. See id.

### *4. Temporary Interrogation of Defendant at Dallas-Fort Worth Airport was Lawful*

Lastly, the court focuses on Crowder's temporary detention at the Dallas-Fort Worth Airport on January 24, 2006. First, this argument is moot because Crowder consented to the

interview with the law enforcement officers. The agents approached Crowder because they had a reasonable, articulate suspicion, based on Crowder's behavior, that he was about to commit a crime. See Terry, 392 U.S. at 1. Crowder paid for his airline tickets in cash, did not carry any luggage, and had $46,000 in one-hundred dollar bills in his possession. When the DEA agents approached Crowder and Watkins, both men consented to an interview. Additionally, Crowder consented to the agents' search of his bag, and voluntarily displayed the $46,000 in cash to the law enforcement officers. Crowder claimed that the cash resulted in the proceeds of a real estate transaction, and submitted documents, as well as telephone numbers of the alleged seller and broker of the deal. Upon review of these document, the DEA agents asked if a drug-sniffing dog could smell the money. Crowder again consented, and after the dog-sniff did not detect narcotics, Crowder was free to leave. The DEA agents did not seize any of Crowder's property during this interview.

At most, this encounter can be described as a temporary detention, where Crowder voluntarily answered the agents' questions. After the agents had completed their questions, and had no other reason to keep Crowder at the airport, he was free to go. It is well established that "mere police questioning does not constitute a seizure." Muehler v. Mena, 544 U.S. 93, 101 (2005) (quoting Florida v. Bostwick, 501 U.S. 429, 434 (1991)). Despite the fact that officers "have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine that individual's identification; and request consent to search his or her luggage." Id. Likewise, in this case, the initial detention of Crowder was lawful, under the Fourth Amendment. Once the officers had completed their questioning that Crowder consented to, he was free to leave.

10

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress is denied.

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES R. NORGLE, Judge

United States District Court

DATED: 5/10/07