UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | 06 CR 102 |
| v. | ) | |
| | ) | Hon. Charles R. Norgle |
| MAURICE CROWDER | ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the court is Defendant Maurice Crowder's Motion for a New Trial. For the following reasons, the Motion is denied.

## I. BACKGROUND

### A. Facts

On January 24, 2006, Defendant Maurice Crowder ("Crowder") and co-Defendant Charome Watkins ("Watkins") boarded an airplane in Chicago bound for Tucson, Arizona. Crowder and Watkins ("Defendants") attracted the attention of Drug Enforcement Administration ("DEA") Agents by paying for their tickets with cash and not checking any luggage. Defendants' flight made a scheduled stopover in Dallas-Forth Worth. As Defendants exited the plane in Dallas, two DEA Agents approached them. Defendants agreed to speak with the Agents. During the interview, Crowder revealed that he was in possession of $46,000 in cash. Crowder asserted that he had obtained this money in a recent real estate transaction, and gave the DEA Agents the names and telephone numbers of a mortgage broker and the seller of the property. These individuals spoke with the DEA Agents, and faxed the Agents documents

1

related to the transaction. Crowder then agreed to allow a drug detecting dog to sniff the money. The dog did not alert on the cash. Defendants were allowed to continue on to Tucson.

On January 27, 2006, a woman who identified herself as "Pamela Miller" arranged for a truck driver in Tucson to transport a vehicle to Harvey, Illinois. "Pamela" asked the driver to meet with her purported husband "Ricky Miller" to pick up the vehicle. At approximately 1:30 p.m. on that same date, the truck driver arrived at the predetermined meeting point. Shortly thereafter, a Hispanic male arrived at the meeting point driving a 1998 Ford Mustang convertible, the vehicle to be transported. Several minutes later, another Hispanic male arrived driving another vehicle. The truck driver inventoried the Mustang to look for existing damage, and noted that the fender wells, hood scoops, and other items were missing from its exterior. The truck driver then filled out a Bill of Lading, and gave a pink copy to one of the Hispanic males. The Hispanic males then left the area quickly. The truck driver loaded the Mustang onto a multi-vehicle transport trailer and departed.

On February 3, 2006, during his trip to the Chicago area, the truck driver received numerous telephone calls about the location of a vehicle he was carrying. This vehicle was not the Mustang. The driver became concerned enough about these calls to contact the Missouri Highway Patrol ("MHP"). The MHP instructed the driver to pull over at the next weigh station. The driver did so, and was met by MHP officers. The driver consented to a search of the vehicle in question. The search of this vehicle resulted in the seizure of controlled substances and a controlled delivery unrelated to the instant case. After completing their search, the officers asked the driver if any other vehicles he was transporting had raised his suspicions. The driver then pointed to the Mustang, and explained that the Hispanic males who had dropped off the Mustang

2

immediately signed the Bill of Lading and left the area, without waiting for the driver to inspect the vehicle for pre-existing damage. The driver also explained that the Mustang was missing several items from its exterior.

The officers visually inspected the Mustang, and noticed that the back seat was not properly attached to the interior of the car, and that screws were resting on the front and back seats. The truck driver consented to a search of the Mustang. Upon entering the Mustang, the officers discovered that the odor of marijuana permeated the interior. A search of the Mustang revealed approximately eighty pounds of marijuana and two kilograms of powder cocaine hidden in compartments below and behind the back seat. The MHP officers contacted the DEA. The DEA then arranged for a controlled delivery of the Mustang and its contents to its intended recipients.

The truck driver was scheduled to deliver the Mustang to a Dixie Highway address in Harvey, Illinois on February 7, 2006. During the driver's trip to Harvey, an individual who used the name "Andrew Thomas," but was later identified as Watkins, called the driver numerous times, and inquired as to the anticipated delivery time for the Mustang. The driver and Watkins agreed to meet on February 7, 2006, at the Dixie Highway address. That same day, DEA agents set up surveillance in the scheduled delivery area. In addition, the truck driver was equipped with an audio recording device. At approximately 4:45 p.m. on February 7, 2006, a Ford Taurus driven by Crowder approached the truck near the delivery area. Watkins was a passenger in the Taurus. Defendants got out of the Taurus and approached the truck.

Crowder then presented the truck driver with a pink copy of the Bill of Lading – the same copy the driver had given the Hispanic males who dropped off the Mustang in Tucson. Watkins

3

then signed for the delivery of the Mustang using the name "Andrew Thomas." Watkins handed the paperwork to Crowder. Crowder gave Watkins cash, and Watkins paid the driver the delivery fee. Watkins then drove away in the Mustang, while Crowder followed Watkins in the Taurus. Defendants were arrested shortly thereafter.

**B. Procedural History**

A federal grand jury returned a two-count Indictment against Defendants on May 18, 2006. The Indictment alleged that Defendants conspired and agreed to possess with intent to distribute in excess of 500 grams of mixtures containing cocaine, and approximately eighty pounds of mixtures containing marijuana, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. Defendants were arraigned on May 30, 2006, and both pled not guilty.

Watkins changed his plea to guilty on March 27, 2007, pursuant to a written Plea Agreement. The Plea Agreement provided that, in exchange for Watkins' plea to Count One, and his cooperation, the government would make certain concessions regarding sentencing. The government also agreed to dismiss Count Two as to Watkins.

Crowder filed a Motion to Suppress Evidence on November 2, 2006. On March 28, 2007, he filed a supplemental Motion to Suppress Evidence. The court denied this Motion in a written Opinion and Order issued on May 10, 2007. The court then set a trial date of August 14, 2007. However, approximately one week before the trial date, Watkins, a government witness, was killed. The court granted the government's motion to reset the trial date to November 6, 2007.

One week before the trial was to begin, the government learned from a MHP Corporal that there had been no dog sniff performed on the Mustang during the events of February 3, 2006.

This development was potentially significant because the government had informed the court that a dog sniff on the Mustang had been performed, and the court had referenced the purported dog sniff of the Mustang in its May 10, 2007 Opinion and Order. The government sent a letter to defense counsel the next day advising counsel of the situation, and informed the court at the next status hearing. The court determined that, because it had denied Crowder's Motion to Suppress on numerous other grounds, including the threshold issue of standing, that the new information regarding the lack of a dog sniff would not have altered its ruling.

Crowder waived his right to jury trial, and a three day bench trial concluded on November 8, 2007. The court issued findings of fact and conclusions of law in open court on February 22, 2008, finding Crowder guilty as charged in the Indictment. Sentencing is set for July 24, 2008, at 10:30 a.m.

Crowder filed the instant Motion for a New Trial on March 17, 2008. The Motion is fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Decision

Pursuant to Federal Rule of Criminal Procedure 33, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Motions to grant a new trial "are disfavored, and properly granted only in the most extreme cases." United States v. Jenkins, 218 F.R.D. 611, 613 (N.D. Ill. 2003); see also United States v. Martinez, 763 F.2d 1297, 1312-13 (11th Cir. 1985). When a defendant has moved for a new trial based on purportedly insufficient evidence, the court should grant the motion "only where the verdict is against the manifest weight of the evidence, and a guilty verdict would result in a

5

miscarriage of justice." Jenkins, 218 F.R.D. at 613. In deciding a motion to grant a new trial, "the court considers whether the verdict is against the manifest weight of the evidence, taking into account the credibility of the witnesses." United States v. Washington, 184 F.3d 653, 657 (7th Cir. 1999). "If the complete record, testimonial and physical, leaves a strong doubt as to the defendant's guilt, even though not so strong a doubt as to require a judgment of acquittal, the district judge may be obliged to grant a new trial." United States v. Morales, 910 F.2d 467, 467 (7th Cir. 1990). "The decision to grant or deny a motion for a new trial rests within the sound discretion of the trial court." United States v. Reed, 875 F.2d 107, 113 (7th Cir. 1989).

## B. Crowder's Motion for a New Trial

Crowder makes the following six assertions in his Motion for a New Trial. The government's reliance on the purported dog sniff on the Mustang prejudiced Crowder's right to a fair trial. Late disclosure of Crowder's post-arrest inculpatory statements and behavior prejudiced Crowder's right to a fair trial. Late disclosure of recorded telephone conversations between Watkins and the truck driver prejudiced Crowder's right to a fair trial. The court erred in admitting hearsay evidence. The court erred in allowing the government's expert witness to testify at trial. The evidence failed to prove Crowder guilty beyond a reasonable doubt.

The court first notes that Crowder has failed to develop these assertions with case law or other authority. That alone is sufficient reason for the court to deny this Motion. "Arguments that are not adequately developed or supported are waived." United States v. Jones, 224 F.3d 621, 626 (7th Cir. 2000) (quoting United States v. Watson, 189 F.3d 496, 500 (7th Cir. 1999)); see also United States v. Bonsu, 336 F.3d 582, 587-88 (7th Cir. 2003). With an abundance of caution, however, the court will address this Motion on its merits.

6

The government has admitted that a DEA Agent incorrectly testified before the Grand Jury that a dog sniff was performed on the Mustang during the MHP's February 3, 2006 search of that automobile. When the government became aware that no such dog sniff had taken place, it brought the matter to the attention of both Crowder and the court. The court went on to rule, in open court, that the absence of a dog sniff would not have altered its ruling on Crowder's Motion to Suppress. When the court issued its findings of fact and conclusions of law in this case, the government again brought this matter to the court's attention, and the court again made it clear for the record that the absence of a dog sniff did not alter any material aspect of this case. There was ample justification to search the Mustang, including the suspicious behavior of the individuals who dropped off the Mustang in Tucson, the loose back seat of the Mustang, the screws laying on the floor of the Mustang, and the truck driver's consent to the search. Even if defense counsel had called the DEA Agent in question to the stand in this case, any testimony that Agent would have given about the lack of a dog sniff of the Mustang would not have altered the court's decision to find Crowder guilty as charged.

Crowder next asserts that the government untimely disclosed to defense counsel that the "report regarding Mr. Crowder's pretrial proffer was inaccurate," as Crowder's post-arrest incriminating statements to DEA Agents, and his post-arrest inculpatory behavior, were not included in that proffer report. Crowder argues that the late disclosure of this information prevented defense counsel from properly preparing for trial. The government asserts that these incriminating post-arrest statements and behavior were not discussed at the proffer session, and were therefore not included in the proffer report. The government further asserts that once it became aware of Crowder's post-arrest inculpatory statements and behavior, it promptly notified

the defense. The court has no reason to believe the government's representations regarding this matter are not truthful, but these representations are not relevant, because it is undisputed that the government never used any evidence regarding Crowder's post-arrest inculpatory statements or behavior at trial.

To the extent Crowder may be asserting that the government, in failing to include Crowder's post-arrest statements and behavior in the proffer report, somehow failed to meet its obligations under Brady, this argument is meritless. The Brady rule requires the government to disclose any material evidence that is favorable to the defendant. Brady v. Maryland, 373 U.S. 83 (1963). Crowder's inculpatory post-arrest statements and actions are clearly not favorable to him. In addition, the Brady rule has not been extended to the defendant's own statements. "[T]he government cannot be said to have suppressed evidence of what the defendant himself said . . . [The defendant] knows what he said, and if he forgot . . . it was not the government's job to remind him." United States v. Mahalick, 498 F.3d 475, 478-79 (7th Cir. 2007) (internal citations omitted).

Crowder also asserts that the government's disclosure of recorded telephone conversations between Watkins and the truck driver was untimely. The government asserts that it tendered a copy of these recordings to defense counsel the same day that government attorneys became aware of the recordings and took possession of them. Crowder does not dispute this. Because Crowder's argument as to the recordings is entirely undeveloped, it is unclear to the court precisely what legal issues he is raising. He may be asserting that the allegedly late disclosure of these conversations constitutes a violation of discovery rules. It is also possible that he is alleging a Brady violation.

Rule 16 of the Federal Rules of Criminal Procedure provides in part,

> Upon a defendant's request, the government must disclose to the defendant, and make available for inspection, copying, or photocopying, all of the following: (i) any relevant written or recorded statement *by the defendant* if: the statement is within the government's possession, custody, or control; and the attorney for the government knows – or through due diligence could know – that the statement exists.

FED. R. CRIM. P. 16(a)(1)(B)(i) (emphasis added). Here, the recordings in question involved conversations between Watkins and the truck driver. Crowder, the defendant in this trial, was not a party to these conversations. There was therefore no violation of discovery rules. If Crowder is asserting a violation of the Brady rule, this argument is meritless as there was no exculpatory evidence as to Crowder on these recordings.[1]

Crowder next contends that the court admitted improper hearsay evidence. However, Crowder fails to specify what this allegedly improper testimony was. The court is therefore unable to address this argument, and considers it waived.

Crowder also objects to the court's decision to admit the expert testimony of Agent Stewart. Stewart testified regarding, *inter alia*: the significance of various states, including Arizona, as sources for illegal drugs; the approximate price of cocaine and marijuana in Tucson and Chicago during January and February 2006; the use of third party carriers by drug traffickers; and drug traffickers' typical use of various code words or abbreviations when referring to controlled substances. This testimony was not improper. See United States v. Hughes, 970 F.2d

---

[1] Crowder also contends that the defense was not furnished with DEA Agent Stenger's "report" prior to Stenger's testimony, or the "report and/or disclosure" of the government expert, DEA Agent Stewart. The government, however, tendered Stenger's written report to defense counsel prior to Stenger's direct testimony, and when Stenger referenced a handwritten property record during cross examination, this record was disclosed to the defense. Agent Stewart did not prepare a written report.

9

227, 236 (7th Cir. 1992) ("narcotics code words constitute an appropriate subject for expert testimony, and [] federal agents who have training and experience in drug-related transactions, crimes and prosecution are qualified to give expert testimony concerning the practices of those engaged in this type of activity.") (internal quotation marks and citations omitted); see also United States v. Navarro, 90 F.3d 1245, 1261 (7th Cir. 1996) ("Law enforcement officers [] may qualify as experts in narcotics trafficking and may offer explanations to the jury.").

Finally, Crowder asserts that the evidence presented by the government in this case was insufficient to convict him. The Seventh Circuit has set the bar high for criminal defendants seeking new trials based on the purported insufficiency of the evidence. "'Motions for new trial based on weight of the evidence are not favored. Courts are to grant them sparingly and with caution, doing so only in those really exceptional cases.'" Reed, 875 F.2d at 113 (quoting Martinez, 763 F.2d at 1312-13). The evidence in this case was overwhelming. The government's evidence showed, *inter alia*, that: Crowder and Watkins traveled to Tucson in January 2006 with $46,000 in cash; the Mustang, with Crowder's full knowledge, was loaded with cocaine and marijuana and delivered to a truck driver in Tucson; on February 7, 2006, Crowder and Watkins appeared in Harvey, Illinois to recover the Mustang after it had been transported from Tucson; Crowder gave the truck driver a Bill of Lading for the Mustang on February 7, 2006; Crowder's words and behavior on the videotape of the controlled delivery on February 7, 2006 indicated his full knowledge that the Mustang contained cocaine and marijuana; and Crowder intended to possess these substances. This therefore is not one of those "really exceptional cases" where the court, in the interest of justice, should order a new trial based on the insufficiency of the evidence.

## III. CONCLUSION

For the foregoing reasons, Crowder's Motion for a New Trial is denied. Sentencing remains set for July 24, 2008, at 10:30 a.m.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

Dated: June 13, 2008

11